LOCAL 84, THEATRICAL STAGE EMPLOYEES,
MOVING PICTURE TECHNICIANS, ARTISTS
AND ALLIED CRAFTS OF THE UNITED
STATES, ITS TERRITORIES AND
CANADA, AFL-CIO, CLC,
ET AL. *v.* ROBERT
FRANCIS ET AL.
(AC 33291)

Robinson, Alvord and Mihalakos, Js.

Argued May 30—officially released September 11, 2012

*Richard J. Padykula*, with whom was *Leon M. Rosenblatt*, for the appellants (plaintiffs).

*Michael J. Walsh*, for the appellees (defendants).

*Opinion*

ALVORD, J. This action concerns the merger of two union locals within the International Alliance of Theatrical Stage Employees (International). The plaintiff union, Local 84, Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, its Territories and Canada, AFL-CIO, CLC (Local 84), and the plaintiffs Stage Hands Referral Service, LLC, and Charles Buckland and Stella Cerullo, officers of Local 84, appeal from the judgment of the trial court in favor of the defendants Robert Francis, Sheila Harrington-Hughes and Michael Hughes, former officers of Local 538.[1] On appeal, the plaintiffs claim that the trial court improperly (1) determined that they did not have standing to bring a claim for breach of fiduciary duty against Francis, Harrington-Hughes and Hughes for certain actions taken by them during the effectuation of the merger between Locals 84 and 538, (2) determined that Francis and Hughes were not unjustly enriched (3) allowed expert testimony by the vice president of the International, Anthony DePaulo, and (4) determined that Hughes and Francis did not violate the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

---

[1] The plaintiffs do not appeal from the summary judgment rendered in favor of the defendants Production Services 538, LLC, and Crew 538, LLC, and the judgment rendered in favor of Stage Production Services, LLC.

The following facts, as found by the court, are relevant to our disposition of this appeal. Both Local 84 and Local 538 represented stage hands who sought employment at various performing arts venues throughout the state. A dispute arose in 2005 regarding each local's jurisdiction at the Mohegan Sun Casino. Subsequent to that dispute, the International decided to merge Local 538 into Local 84, with Local 84 as the surviving local. Although Local 538 objected to the merger in writing on June 19, 2006, DePaulo informed the board members of Local 538 that the merger already had been approved and that he had been assigned to effectuate it. In a letter dated August 8, 2006, DePaulo stated that certain measures had to be taken in order to finalize the merger, including forwarding all of Local 538's books and records to the International, transferring Local 538's assets to Local 84, and transferring members of Local 538 into Local 84.

During the summer of 2006, and prior to the merger, Francis, Hughes and Harrington-Hughes continued to preside over meetings of Local 538 and to act on behalf of the local and its members. In August, 2006, Francis, Hughes and Harrington-Hughes, as officers of Local 538, voted to make four disbursements from the treasury of Local 538 (four payments). The first payment was a donation of $2000 to the Veterans of Foreign Wars post to thank the post for allowing Local 538 to use its facilities for meetings without cost for the previous ten years. The second payment was a donation of $750 to a sister local in Dallas for its 100th anniversary commemorative booklet. The third payment was a donation of $1000 to a sister local's memorial fund. Finally, Local 538 disbursed $200 to each of its members as vacation pay in lieu of the annual summer picnic.

On August 30, 2006, Francis, Hughes and Harrington-Hughes met with DePaulo to provide him with all of the materials required to finalize the merger, including

a check in the amount of $8667.04, representing the remaining funds in the treasury of Local 538. At the time of the merger, Francis and Hughes dissolved a limited liability company, of which they were members, called Stage Production Services, LLC (Stage Production). Stage Production's assets, consisting of $15,000, were transferred to a new limited liability company called Crew 538, LLC (Crew 538), of which Francis and Hughes were the only members.

On July 16, 2008, the plaintiffs filed a summons and complaint alleging, inter alia, conversion, unjust enrichment, statutory theft, breach of fiduciary duty and violation of CUTPA. On November 4, 2009, the defendants filed a motion for summary judgment. The court, *Hon. Robert Satter*, judge trial referee, concluded: "The central issue in the case is when the merger of Local 538 and Local 84 occurred. If the merger occurred after the defendant officers of Local 538 distributed monies to the members of the local and to other entities, then their motion for summary judgment should be granted. . . . [The court] is forced to conclude that a factual issue exists as to when the merger occurred." The court thus denied the motion for summary judgment with regard to Francis, Hughes, Harrington-Hughes and Stage Production.[2]

During the trial, which took place on October 20 and 21, 2010, the plaintiffs presented the testimony of Francis, Hughes, Harrington-Hughes, Charles Buckland, the president of Local 84, and William Philbin, the business representative of Local 84. The defendants offered the videotaped deposition of DePaulo.[3] The

---

[2] The court granted the defendants' motion for summary judgment as to Stage Production, and Production Services 538, LLC, on October 13, 2010, but during trial on October 20, 2010, reconsidered its decision and denied the summary judgment as to Stage Production.

[3] DePaulo was not available to testify and was beyond the court's subpoena power.

plaintiffs filed a motion in limine to preclude the deposition testimony. They argued that DePaulo was not qualified as an expert witness because he lacked the appropriate experience in effectuating mergers and that the defendants had not disclosed DePaulo as an expert pursuant to the rules of practice. The court denied the motion in limine.

At trial, the plaintiffs renewed their objection to the showing of the entire deposition. The court overruled the objection, stating: "I've noted your objection and I overrule it, I will see the video but I will give you the right to take the transcript and make your objections to any material that you feel is not proper . . . either as irrelevant or as opinion evidence or whatever grounds you feel [are] appropriate." The defendants' counsel then noted: "I thought I'd mark the original [deposition] transcript as a full exhibit . . . and then I would mark the DVD as a court exhibit if that's acceptable to you? . . . [S]ubject to whatever motion [is] made later." The court responded in the affirmative, and the plaintiffs did not object at that time.

At the close of evidence, the defendants made an oral motion to dismiss all counts of the complaint pursuant to Practice Book § 15-8[4] on the basis of the plaintiffs' inability to make out a prima facie case. The plaintiffs argued that to the extent the defendants relied on DePaulo's testimony in arguing the motion to dismiss, the court should deny the defendants' motion because DePaulo was not an expert and the defendants improperly offered his deposition as opinion testimony. The

[4] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

plaintiffs, however, offered no specific objections to material in the transcript of the deposition. In an oral ruling, the court granted the defendants' motion to dismiss the statutory theft and CUTPA counts of the plaintiffs' complaint. The plaintiffs did not file a motion for articulation regarding the court's oral ruling. The court allowed the plaintiffs and the defendants to file posttrial briefs on the remaining counts of the complaint. In a memorandum of decision dated March 8, 2011, the court rendered judgment for the defendants on all remaining counts. This appeal followed. Additional facts will be set forth as necessary to our disposition of this appeal.

I

The plaintiffs first claim that the trial court improperly determined that Local 538 did not owe or breach a common-law fiduciary duty to Local 84 during the effectuation of the merger between the two locals.[5] The court determined that the plaintiffs did not have standing to bring a claim for breach of fiduciary duty against Francis, Harrington-Hughes and Hughes. We agree with the court that the plaintiffs lacked standing.

"[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real

---

[5] In their posttrial briefs, the plaintiffs also claimed a breach of fiduciary duty pursuant to the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 501. They also raise that issue in their appellate brief. We conclude that the court properly determined that the plaintiffs were barred from bringing this claim because they neglected to raise the claim as an allegation in their complaint. "The allegations of a complaint limit the issues to be decided on the trial of a case and are calculated to prevent surprise to opposing parties. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." *Stamford Landing Condominium Assn., Inc.* v. *Lerman*, 109 Conn. App. 261, 271, 951 A.2d 642, cert. denied, 289 Conn. 938, 958 A.2d 1246 (2008).

interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *American States Ins. Co.* v. *Allstate Ins. Co.*, 94 Conn. App. 79, 83, 891 A.2d 75 (2006), aff'd, 282 Conn. 454, 922 A.2d 1043 (2007).

The trial court's determination that a plaintiff lacks standing is a conclusion of law over which we exercise plenary review. *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 104, 874 A.2d 742, cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d 526 (2005). "We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) Id.

The court determined that the plaintiffs did not have standing to bring a claim for breach of common-law fiduciary duty because it concluded that, while Local 538 and its officers owed a fiduciary duty to the members of Local 538, they did not owe a fiduciary duty to Local 84 or its members. The plaintiffs argued that Francis, Harrington-Hughes and Hughes owed a fiduciary duty to Local 84 because they claimed that the merger between Local 538 and Local 84 occurred on June 9, 2006. They argued that, if the merger took place on June 9, then Local 538's funds belonged to Local 84 as of that date because Local 538 would no longer have existed independently. Thus, the plaintiffs argued that they had standing to raise a claim of breach of fiduciary duty based on the four payments.

In rejecting the plaintiffs' claim, the court made a factual finding that the merger between the two locals

occurred on August 30, 2006. The following additional facts were found by the court. "Although the International announced the merger on June 9, 2006, it assigned Mr. DePaulo to 'effectuate' the merger. In his letter to Local 538 of August, 2006, Mr. DePaulo specifically stated that 'to finalize the merger of Locals 538 and 84,' books and records of Local 538 had to be forwarded to the International and all assets were to be transferred to Local 84. Those events occurred on August 30, 2006, when the officers of Local 538 met with Mr. DePaulo, gave him the books and records of the Local and a check for the balance of the Local's account. As a consequence, this court concludes that the merger actually took place on August 30, 2006."

There is ample evidence to support the court's finding that the merger took place on August 30, 2006, and we are not left with the firm and definite conviction that a mistake has been committed. The plaintiffs have not demonstrated that the court's finding is clearly erroneous. On the basis of its finding that the merger did not take place until August 30, 2006, the court found that Local 538 was an autonomous, independent local at the time that each of the four payments were made. Therefore, the plaintiffs had no standing to bring the claim of breach of fiduciary duty as a matter of common law because the plaintiffs had no real interest in the cause of action, or a legal or equitable right, title or interest in the assets of Local 538.

On the basis of its findings, the court determined that the officers of Local 538 owed no fiduciary duty to Local 84 and its members until the date of the merger. The plaintiffs maintain, however, that even if the merger did not occur on June 9, 2006, Francis, Harrington-Hughes, and Hughes entered into a fiduciary relationship with Local 84 and its members as soon as the order for the merger was issued. They claim that once the officers of Local 538 were aware of the impending

merger, they had a duty to preserve Local 538's assets for Local 84's benefit.

The court did not address this argument directly in its memorandum of decision; however, it unequivocally stated that Francis, Harrington-Hughes, and Hughes owed no fiduciary duty to Local 84 or its members prior to the date of the merger: "[T]he court has determined that the merger occurred on August 30, 2006, [and] the individual defendants owed no fiduciary duty to [Local 84] or its members prior to that date." The court therefore rejected the plaintiffs' alternative argument that a duty was owed to the plaintiffs prior to the merger date.

It was the plaintiffs' burden to establish the existence of a fiduciary duty. See *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 41, 761 A.2d 1268 (2000); see also *Dunham* v. *Dunham*, 204 Conn. 303, 322, 528 A.2d 1123 (1987) ("[o]nce a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary" [internal quotation marks omitted]), overruled on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996). "It is well settled that a fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . Although [our Supreme Court] has refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations, we have recognized that not all business relationships implicate the duty of a fiduciary. . . . In particular instances, certain relationships, as a matter of law, do not impose upon either party the duty of a fiduciary." (Citations omitted; internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, supra, 38.

The plaintiffs argue that Local 538 entered a fiduciary relationship with Local 84 at the time the merger decision was made by the International because Local 538 had superior knowledge of its own financial accounts and a duty not to spend money in those accounts during the interim period between the directive to merge and the actual merger date. The plaintiffs did not provide any relevant authority to the trial court establishing that a fiduciary duty attached prior to the merger date, and they have not provided such authority to this court. Therefore, the plaintiffs failed to establish that a fiduciary relationship existed between the two locals prior to the effectuation of the merger.[6] Accordingly, the court did not improperly determine that the plaintiffs lacked standing to bring a claim for breach of fiduciary duty against Francis, Harrington-Hughes and Hughes.

II

The plaintiffs next claim that the court improperly determined that Francis and Hughes were not unjustly enriched when they transferred assets from Stage Production to Crew 538. We disagree.

We first set forth the applicable legal principles. "[W]herever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract, restitution of the value of what has been given must be allowed. . . . Under such circumstances, the basis of the plaintiff's recovery is the unjust enrichment of the defendant. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to

_____

[6] Even if we assume, arguendo, a fiduciary duty attached once Local 538 had knowledge that a merger was to take place, the plaintiffs have failed to show how any of the four payments could be said to be in breach of that duty. The court analyzed each payment and explicitly found that the plaintiffs failed to prove that any of the four payments were improper, and we agree with the court's analysis.

equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Citations omitted; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 451–52, 970 A.2d 592 (2009).

The plaintiffs claim that the assets of Stage Production were actually assets of Local 538 and that, therefore, the assets of Stage Production should have been preserved and provided to Local 84 as a result of the merger. The following additional facts, as found by the court, are relevant to our resolution of this claim. "[Stage Production] was formed by officers of Local 538. As of 2002, the members and owners of [Stage Production] were Hughes and Francis. Neither obtained their positions as members and owners as a result of a vote of the members of the Local, and neither invested any of his own money in [Stage Production]. [Stage Production] operated as follows: Much of the work of the Local was at the University of Rhode Island under a subcontract with a private company called Global Spectrum. Local 538 sent its members to work at Global Spectrum. Global Spectrum paid [Stage Production], which, in turn, paid Local 538 members the union wages and paid an assessment to the Local. The other use of

[Stage Production] was as a facade to supply union employees to the Native American casinos. Since those casinos did not recognize labor unions, [Stage Production] provided Local 538 members to work at the casinos, paid the union members their union wages, paid Local 538 the members' assessments and retained the difference, if any.

"Hughes and Francis dissolved [Stage Production] at the end of 2006 or possibly early 2007 because they had disassociated from [the International]. When they were wrapping up [Stage Production], they found there was money in its account in the amount of $15,000. Hughes and Francis rolled over this money into a new LLC known as [Crew 538].

"All of the time they provided services for [Stage Production], Francis and Hughes were never paid and never received any compensation whatsoever. At the time of the dissolution of [Stage Production], Hughes and Francis were owners of [Stage Production] and considered the net profits realized over the years as their own. No member of Local 538 claimed any right to the $15,000. The union members were paid for their services at the union rate. Local 538 was paid its assessments from those services of the union members. [Stage Production] was a separate entity and the owners . . . were entitled to the monies in its account.

"[The] [p]laintiffs have failed to show why they have any legal right or entitlement to the profits of [Stage Production] at the time [Stage Production] was dissolved."

We note at the outset that the court did not determine that there was a contractual relationship between the parties. Assuming, arguendo, that such a relationship existed, the plaintiffs cannot prevail on their claim that Francis and Hughes were unjustly enriched as a result of transferring the $15,000 from Stage Production to

Crew 538. The court's determination that Hughes and Francis were not unjustly enriched is based on its factual findings. "The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 452.

After thoroughly reviewing the record, we conclude that the plaintiffs have not demonstrated that the court's factual findings with regard to Stage Production are clearly erroneous. The plaintiffs cannot show that Local 538 had any claim to the assets of Stage Production, an independent limited liability company, and, thus, they cannot establish that Local 84 had any resulting claim to those assets. The court properly determined that the forced merger of the two locals did not reach the assets of Stage Production. Accordingly, the court properly rejected the plaintiffs' claim that Francis and Hughes were unjustly enriched.

### III

The plaintiffs next claim that the court improperly allowed and relied on expert testimony by the International's vice president DePaulo. Specifically, the plaintiffs claim that the defendants never disclosed DePaulo as an expert according to the rules of practice and that he had never effectuated a merger before and, thus, was not qualified to testify as an expert. We decline to review this claim because it was not adequately briefed.

The plaintiffs have failed to comply with Practice Book § 67-4 (d) (3).[7] "When raising evidentiary issues on appeal, all briefs should identify clearly what evidence was excluded or admitted, where the trial counsel objected and preserved his rights and why there was error. . . . The mere assertion in a brief that evidence was improperly excluded, coupled with transcript page references, will not be sufficient. For evidentiary rulings claimed to be improper to be reviewed by this court, they must be set forth in the briefs as required and outlined by the rules of practice." (Citations omitted; internal quotation marks omitted.) *Roberto* v. *Honeywell, Inc.*, 43 Conn. App. 161, 163, 681 A.2d 1011, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996). "We need not address the defendant's claim of evidentiary error as this claim has not been presented in accordance with the requirements of our rules of practice." *Mattie & O'Brien Contracting Co.* v. *Rizzo Construction Pool Co.*, 128 Conn. App. 537, 545, 17 A.3d 1083, cert. denied, 302 Conn. 906, 23 A.3d 1247 (2011).

The plaintiffs claim broadly that the court admitted improper opinion and expert testimony by DePaulo, yet they have failed to provide any citations to the specific portions of DePaulo's testimony that they claim were improperly admitted by the court. They have also failed to provide this court with any specific objections made to the trial court, as invited by that court, regarding those specific portions of testimony. General citations to the transcript are insufficient to meet the requirements of the rules of practice. Accordingly, we do not address this evidentiary claim.

## IV

The plaintiffs' final claim is that the court improperly granted the defendants' motion to dismiss the count of their complaint alleging that Hughes and Francis

---

[7] Practice Book § 67-4 (d) (3) provides: "When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the

violated CUTPA by authorizing the four payments prior to the merger without following a democratic process and moving $15,000 from Stage Production to Crew 538. The plaintiffs did not adequately brief this issue.

After the plaintiffs put on their case, the defendants moved to dismiss all counts of the complaint for failure to make a prima facie case pursuant to Practice Book § 15-8. In a brief oral ruling, the court granted the defendants' motion with regard to the CUTPA count of the plaintiffs' complaint.[8] In their appellate brief, the plaintiffs do not cite the appropriate standard of our review of a motion to dismiss pursuant to Practice Book § 15-8. They also fail to set forth, for our consideration, any trial evidence supportive of the elements of their CUTPA claim, and, thus, their appellate brief lacks any analysis of the relevant issue on appeal. Therefore, we decline to address the plaintiffs' final claim. See, e.g., *Carabetta* v. *Carabetta*, 133 Conn. App. 732, 737, 38 A.3d 163 (2012) ("[i]nasmuch as the plaintiffs' briefing of the . . . issue constitutes an abstract assertion completely devoid of citation to legal authority or the appropriate standard of review, we exercise our discretion to decline to review this claim as inadequately briefed" [internal quotation marks omitted]).

The judgment is affirmed.

In this opinion the other judges concurred.

---

objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling."

[8] The court also determined that the plaintiffs had not made out a prima facie case on the statutory theft count of the complaint. The plaintiffs did not appeal the court's dismissal of that count.