******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MERLISSA COMISSIONG ET AL.
## *v.* RAYMOND CURRYTTO
## (AC 47680)

Alvord, Moll and Clark, Js.

*Syllabus*

The defendant appealed from the trial court's judgment for the plaintiffs on their breach of contract claim that the defendant failed to perform home improvement services in their home's upstairs bathrooms in a workmanlike manner. At trial, the plaintiffs presented expert testimony from A, a general contractor hired by the plaintiffs after they terminated the defendant's services. On appeal, the defendant claimed, inter alia, that the court improperly concluded that he breached the parties' contract. *Held*:

The trial court properly applied the law in determining that the defendant had not met his burden of proving that the plaintiffs had materially breached the contract by failing to provide notice and an opportunity to cure, as the court found that the serious deficiencies in the upstairs bathrooms would not be corrected with additional time, and, therefore, providing notice and an opportunity to cure would have been futile.

This court declined to review the merits of the defendant's claim that the trial court improperly determined that he failed to prove the count of his counterclaim alleging unjust enrichment, as the defendant failed to provide an adequate record for review.

The trial court did not abuse its discretion in admitting A's testimony as an expert in home improvement contracting or in crediting A's testimony to find that the work performed by the defendant in the upstairs bathrooms was unworkmanlike, as, although A admitted that he was not an expert in plumbing matters, the defendant did not identify any portion of A's testimony that required plumbing expertise or that exceeded the scope of his qualifications as an expert in home improvement contracting, and the defendant did not object to any specific portion of A's testimony on the basis that he did not possess the appropriate qualifications to offer an expert opinion.

This court declined to review the defendant's claim that the trial court deprived him of his right to a fair trial, as it was inadequately briefed.

Argued January 20—officially released May 12, 2026

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the defendant filed a counterclaim; thereafter, the case was tried to the court, *K. Murphy, J.*; judgment for the

plaintiff on the complaint; subsequently, the court, *K. Murphy, J.*, granted the defendant's motion to open the judgment and rendered judgment for the plaintiff on the counterclaim, and the defendant appealed to this court. *Affirmed*.

*Raymond Currytto*, self-represented, the appellant (defendant).

*Scott Jackson*, for the appellees (plaintiffs).

*Opinion*

ALVORD, J. The self-represented defendant, Raymond Currytto, appeals from the judgment of the trial court, rendered following a court trial, in favor of the plaintiffs, Merlissa Comissiong and Kyle Anderson, on their breach of contract claim that the defendant failed to perform home improvement services in their home's upstairs bathrooms in a workmanlike manner. On appeal, the defendant claims that the court (1) improperly concluded that he breached the contract, (2) incorrectly determined that there was no evidence to support the counts in his counterclaim, (3) abused its discretion in admitting the testimony of the plaintiffs' expert witness, and (4) violated his right to a fair trial under the Connecticut constitution.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On September 7, 2020, the parties entered into a written contract for various home improvement projects, which the defendant was to perform on the plaintiffs' home. The agreement itemized the following projects: install downstairs shower stall and utility sink, rearrange existing upstairs hall and master bathrooms (upstairs bathrooms), install beam in kitchen area, remodel kitchen, paint interior of upstairs and lower bathrooms, refinish oak floors, perform electrical work, and make plumbing adjustments. The contract listed the "total agreed upon price" for these items as $37,500 and

---

[1] The defendant raises two additional claims on appeal. See footnote 3 of this opinion.

also referenced a separate budget for optional work. The agreement further provided: "Pages 1, 2, 3, 4, comprise the contract. Signed and dated. 3 day right of cancellation acknowledged. Start date Sept.9th or sooner. Finish date Oct 31st. Or sooner. Reasonable delays on part of construction process timings could extend the completion date. Such as waiting for items to arrive or inspection schedules. All work will be completed in workmanlike fashion."

After the contract commenced, the scope of work changed to encompass additional projects, particularly in the kitchen. The contract's completion date was further impacted by delays attributable to both parties, including, for example, the plaintiffs' delay in providing required materials and the defendant's delay in obtaining permitting for the kitchen beam. Due to "changes in the work requirements of the contract and for delays in the plaintiffs' providing materials needed to complete the work," both parties waived the original completion date of October 31. In text messages exchanged on or about December 28, 2020, the plaintiffs asked the defendant when his work would be complete, and the defendant responded with the date of January 20, 2021. The plaintiffs ordered the defendant off the job on January 19, 2021. Prior to the defendant's termination, the plaintiffs had paid him, over time, $28,125 for his services.

On August 5, 2021, the plaintiffs filed a five count complaint against the defendant, alleging breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and statutory theft pursuant to General Statutes § 52-564. In count one, the plaintiffs alleged that the defendant breached the contract when he, inter alia, "failed to complete all work within the agreed upon time period" and "failed to perform all work in a workmanlike fashion . . . ." After filing an answer on November 15, 2021, the defendant filed a revised answer

and three count counterclaim alleging breach of contract, defamation, and unjust enrichment on May 13, 2022.

The case was tried before the court, *K. Murphy, J.*, over the course of five days on November 17 and December 12, 2023, and January 9, 11 and 12, 2024, and closing arguments were held on January 17, 2024. Jose Archuleta, the contractor the plaintiffs hired after terminating the defendant's services, testified as an expert witness for the plaintiffs over two days. On direct examination, Archuleta testified to the deficiencies he observed in the work performed by the defendant in the upstairs bathrooms, explaining, "nothing was finished in its appropriate order" and that when he looked under the tiling, he identified that "[t]here was a lot of movement in some of the flooring, floor tile, boards weren't fastened to studs correctly. Things were not level, plum, or square which had to be done again. For example, in showers, there's hardware that's put on and it needs to be waterproofed, there was no RedGard of any sort, none of the joints were taped and seal[ed] before tile went on. There was some instances where there was tile directly on two by fours, which is not good in a shower. So, there was just a bunch of stuff like that that when we pulled it up, we noticed more problems that we couldn't see on the surface level."

Archuleta testified with respect to the master bathroom that "the floor tile [of the shower] met against the wall tile, which should be in reverse, and the floor tile should be put first and the wall tile on top of it, so that it could shed water properly . . . ." Additionally, he testified, "there's a point where water could get in between a grout joint. And that's one problem, but because nothing was prepped properly, this tile was going to crack, cracking the joints, cracking the grout, which is really going to let water go in." He explained that, "[i]f water gets trapped underneath a shower base in between walls, it causes mold . . . ." He further testified that he observed grout joints that were already cracking, as well as lippage, or

areas where the tile was not set correctly, causing it to stick out.

Archuleta testified that, in the hall bathroom, "the subfloor or the substrate, what goes underneath the Hardie board before you tile, was loose, it had movement." He explained that "if there's any kind of movement in any substrate of tile, it's going to fail, every single time . . . whether it be the grout joints crack or the tile itself cracks. But your substrate has to be a solid surface." He also testified that he observed a deficiency with the tub faucet, explaining that, "in my experience, from my plumbers that do the work for me, when we have those kind of faucets that come over a tub, it needs to be solid, it can't move. This one was moving back and forth, indicating it wasn't secured underneath the trim kit that attaches it to the floor."

In its April 19, 2024 memorandum of decision, the court found "that the plaintiff[s] ha[d] not met their burden of proving a breach of contract on the part of the defendant on the basis of failure to perform on a timely basis" and that "[they] ha[d] also failed to prove that the defendant breached the contract in regard [to] workmanlike fashion on the work required in the kitchen." Addressing timeliness, the court noted "that there were clearly delays in completing the work . . . but some of the delays were attributable to delays in the plaintiffs providing the required materials and some other delays were due to change in work requirements ordered by the plaintiffs." Additionally, the court found that the plaintiffs failed to meet their burden of proving that the work in the kitchen was not conducted in a workmanlike manner. The court credited Archuleta's testimony that most of the kitchen work had been completed and acknowledged that "the amount of unfinished items in the kitchen was somewhat minimal . . . ."

The court, however, did find "that the plaintiffs ha[d] met their burden of proving a breach of contract for the defendant's failure to perform a portion of the job in a workmanlike fashion in regard to the . . . master

bathroom and the hall bathroom." The court found "Archuleta was credible in giving his opinion that the work here was seriously deficient and unworkmanlike." Specifically, it found "that the quality of the tile work was not up to the standard of workmanlike quality, [that] the defendant did not prepare the surfaces properly for the installation of the tile and that the tile that had been installed was crooked, not installed in a way that would prevent water leakage in the future and the shower was not level." The court also noted that "the niche wood was not properly prepared in anticipation of the tile/marble, heating panel was damaged, the subfloor was not properly prepared for the installation of the tile, substandard installation of the faucet, drain leaking, tile work was uneven and not flush, wall was not secure to the ceiling, a damaged window area and the area under the upstairs bathroom (visible from the garage) was very poorly finished."

Although the court considered the defendant's argument that his work did not need to be completely removed, it ultimately found that, on the basis of "the numerous deficiencies observed by the expert, many of which went to the functionality of the plumbing and drains and items that could have had long-term problems without adequate correction, it was reasonable to remove the partially completed work and redo it entirely." The court therefore awarded the plaintiffs damages in the amount of $25,200, which included $8000 for the correction of the hallway bathroom and $16,000 for the correction of the master bathroom, as well as $1200 for use of a dumpster.

On May 7, 2024, the defendant filed a motion to open the judgment, stating that the court had not ruled on his counterclaim. The court issued the following order: "The judgment is opened for the purpose of addressing the defendant's allegation that the court did not rule specifically on [his] counterclaims. The court adopts the factual and legal findings in its decision. The defendant makes three counterclaims, breach of contract, defamation, and

unjust enrichment. After a full trial on this matter the court finds that the defendant has not met his burden of proving these three counterclaims. Accordingly, the court enters judgment in favor of the plaintiff[s] on all three of these counterclaims." Shortly thereafter, the defendant filed a motion for a new trial, which the court denied. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court incorrectly found a breach of contract with respect to the work the defendant performed in the upstairs bathrooms. He argues that "the plaintiffs materially breached [the contract] by delaying materials, insisting on a nonfunctional vanity, and terminating without notice or [opportunity to] cure, barring their recovery." We are not persuaded.

"We first set forth the general rule regarding the review of breach of contract claims. The determination of whether a contract has been materially breached is a question of fact that is subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Villwell Builders I, LLC* v. *Pereira*, 237 Conn. App. 45, 54, 349 A.3d 590 (2026).

The defendant argues that the court "fail[ed] to apply the well established principles of notice and opportunity to cure . . . ." He asserts that the plaintiffs were required to give him notice and an opportunity to cure before terminating his services and that the court was inconsistent in its application of these principles when it considered the plaintiffs' failure to provide notice in the context of the kitchen work but did not consider such failure in the context of the upstairs bathrooms. This failure, he

contends, "invalidates the breach finding against [the defendant]."

The defendant's claim that the court misapplied the law is subject to plenary review. See *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 191, 74 A.3d 1278 (2013) ("[w]hen . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record" (internal quotation marks omitted)). Our courts recognize that the right to cure is implied in every contract as a matter of law, but a cure notice may be unnecessary where the breach is incurable or the opportunity to cure proves futile. *Centerplan Construction Co., LLC* v. *Hartford*, 343 Conn. 368, 412, 419, 274 A.3d 51 (2022). The defendant's argument that the court inconsistently applied the principles of notice and opportunity to cure overlooks the court's finding that, unlike the situation in the kitchen, relating to which the court found minimal unfinished items, "[a]dditional time would not correct the other serious deficiencies represented by the work in the two upstairs bathroom areas." Because the court found that the serious bathroom deficiencies would not be corrected with additional time, it follows that providing notice and an opportunity to cure would be futile. On the basis of the court's findings, we conclude that the court properly applied the law in determining that the defendant had not met his burden of proving that the plaintiffs materially breached the contract by failing to provide notice.[2]

Additionally, we are not persuaded by the defendant's argument that the plaintiffs' conduct prevented his

[2] The defendant argues that, "[s]hould the plaintiffs argue severity of deficiencies, their severity claim fails without notice and opportunity." Because the defendant does not provide any analysis to support this assertion and relies on *Chiulli* v. *Zola*, 97 Conn. App. 699, 905 A.2d 1236 (2006), which is inapposite in that it concerns a motion to dismiss for lack of standing; id., 702; we decline to consider this argument.

Additionally, we note that the defendant claims for the first time in his reply brief that the court's finding that additional time would not correct the deficiencies in the upstairs bathrooms is clearly erroneous, arguing that "there is no evidence supporting incurability . . . ." A claim

performance. Specifically, the defendant posits that, due to their delays in providing materials and insistence on a nonfunctional vanity, the plaintiffs prevented him from completing the work in the upstairs bathrooms by the January 20, 2021 deadline and, therefore, his breach was excused. The court, however, did not find the defendant in breach of the contract for failure to complete the work on time. Rather, the court found that the work in the upstairs bathrooms was not performed in a workmanlike fashion as required by the contract. Given this finding and the defendant's failure to explain how the plaintiffs' conduct constituted a material breach that would excuse his unworkmanlike performance, we reject this argument.

On the basis of the foregoing, we cannot conclude that the court improperly found that the defendant breached the contract.[3]

raised for the first time in a reply brief is unreviewable, and, thus, we decline to review this claim. See, e.g., *State* v. *Myers*, 178 Conn. App. 102, 106–107, 174 A.3d 197 (2017) ("Under our rules of appellate practice, issues cannot be raised and analyzed for the first time in an appellant's reply brief. . . . This rule is a sound one because the appellee is entitled to but one brief and should not therefore be left to speculate at how an appellant may analyze something raised for the first time in a reply brief, which the appellee cannot answer." (Citation omitted.)).

Finally, even if the defendant had challenged the court's finding as clearly erroneous, we could not consider its merits because the defendant did not provide this court with full transcripts of the trial. See part II of this opinion. The clearly erroneous standard of review applies to the court's factual finding that the work in the upstairs bathrooms was so deficient that additional time would not allow it to be corrected. As noted, we can only conclude that "[a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Villwell Builders I, LLC* v. *Pereira*, supra, 237 Conn. App. 54. As discussed in greater depth in part II of this opinion, in the absence of a complete record, we cannot meaningfully review this claim to determine if the court's finding was clearly erroneous.

[3] The defendant raises two additional claims on appeal. He claims that "[t]he plaintiffs' actions—material delays and abrupt termination—constituted a material breach, excusing [the defendant] and supporting his counterclaim." The defendant also claims that the "[p]laintiffs' material

## II

The defendant next claims that the court improperly determined that he failed to prove the count of his counterclaim alleging unjust enrichment.[4] Because the defendant has failed to provide an adequate record for review, we decline to reach the merits of this claim.

It is well established that "[u]njust enrichment is a very broad and flexible equitable doctrine that has as its basis the principle that it is contrary to equity and good conscience for a defendant to retain a benefit that has come to him at the expense of the plaintiff. . . . All the facts of each case must be examined to determine whether the circumstances render it just or unjust, equitable or inequitable, conscionable or unconscionable, to apply the doctrine. . . . Plaintiffs seeking recovery for unjust enrichment must prove **(1)** that the defendants were benefited, **(2)** that the defendants unjustly did not pay the plaintiffs for the benefits, and **(3)** that the failure of payment was to the plaintiffs' detriment. . . . Our review of the trial court's conclusion that the defendant was unjustly enriched is deferential. The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope

breach—terminating [the defendant] without notice on January 20, 2021 . . . bars their $25,200 award . . . . *Burns* v. *Adler*, 325 Conn. 14, 27–28, 33–35, [155 A.3d 1223] (2017), holds that unjustified termination precludes recovery and entitles the contractor to unjust enrichment for retained benefits." We previously determined herein that the court properly applied the principles of notice and opportunity to cure and also rejected the defendant's argument that the plaintiffs' delays and insistence on a nonfunctional vanity prevented his performance. Therefore, we decline to give separate consideration to the defendant's additional claims to the extent that they raise these same arguments. As for his contention regarding unjust enrichment, we address that issue in part II of this opinion.

[4]We decline to consider the portion of the defendant's claim asserting that the court erroneously dismissed the count of his counterclaim for breach of contract, which rests on the same arguments raised in his first claim.

of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." **(**Citation omitted; internal quotation marks omitted.**)** *National Waste Associates, LLC* v. *Scharf*, 183 Conn. App. 734, 741–42, 194 A.3d 1 (2018).

"A determination regarding whether the court's finding was clearly erroneous requires that we review all of the evidence presented to the trial court, including the testimony of the witnesses. Thus, the transcript of the trial is necessary on appeal in order to properly evaluate whether the evidence presented to the trial court supports the court's conclusion . . . .

"[An appellant] has the burden of providing this court with a record from which this court can review any alleged claims of error. . . . Practice Book § 61-10 (a) provides: It is the responsibility of the appellant to provide an adequate record for review. . . . The general purpose of [the relevant] rules of practice . . . [requiring the appellant to provide a sufficient record] is to ensure that there is a trial court record that is adequate for an informed appellate review of the various claims presented by the parties. . . . It is not an appropriate function of this court, when presented with an inadequate record, to speculate as to the reasoning of the trial court or to presume error from a silent record." **(**Internal quotation marks omitted.**)** *Meineke Bristol, LLC* v. *Premier Auto, LLC*, 227 Conn. App. 64, 73, 319 A.3d 826 (2024).

In the present case, the defendant did not provide transcripts of the first day of the trial, November 17, 2023. For the remaining days, the defendant provided only excerpts and not transcripts of the entire proceeding on those days. For example, the defendant provided only eight pages of the January 12, 2024 transcript, covering proceedings from 2:16 to 2:25 p.m., and the transcript expressly indicates that preceding and subsequent proceedings were not included in the excerpt.

Resolution of the defendant's claim that the court improperly determined that he failed to prove the unjust enrichment count of his counterclaim would require

that we review the evidence presented at trial, including evidence of a testimonial nature. In the absence of complete transcripts, we would have to resort to speculation to resolve the defendant's claim. Accordingly, we are unable to address the merits of this claim because the defendant has not provided this court with an adequate record for review.[5]

## III

The defendant next claims that the court abused its discretion in "admitting [Archuleta's] testimony as an expert, particularly on plumbing matters, without properly establishing his qualifications."[6] We are not persuaded.[7]

The following additional procedural history is relevant to our consideration of this claim. On November 16, 2023, during an in-court proceeding, the defendant requested

---

[5] We reach the same conclusion with respect to the portion of the defendant's claim arguing that "unjustified termination precludes recovery and entitles the contractor to unjust enrichment for retained benefits." Because we have already determined that this claim is not reviewable, we decline to give it separate consideration.

[6] To the extent that the defendant's claim on appeal relies on *State* v. *Porter*, 241 Conn. 57, 80–90, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), we conclude that the claim was not preserved. The defendant failed to raise a *Porter* claim to object to the validity of the expert's methods, and, thus, the court never held a hearing, received testimony, or rendered a decision on the validity of Archuleta's methods. We therefore find the defendant's arguments that rely on *Porter* or its criteria unpreserved. See *Weaver* v. *McKnight*, 313 Conn. 393, 415–16, 97 A.3d 920 (2014) ("[t]he failure to raise a *Porter* claim in the trial court results in waiver of that claim and it will not be considered for the first time on appeal").

[7] As discussed in part II of this opinion, the defendant's failure to provide complete transcripts precludes our review of any claims that would require us to review the entire record to assess whether the trial court's conclusion is supported by the evidence presented to it. See *Meineke Bristol, LLC* v. *Premier Auto, LLC*, supra, 227 Conn. App. 73 ("the transcript of the trial is necessary on appeal in order to properly evaluate whether the evidence presented to the trial court supports the court's conclusion" (internal quotation marks omitted)). Regarding the specific claim raised by the defendant with respect to Archuleta's testimony, the record available to this court, which includes all of Archuleta's testimony, is adequate.

an "opportunity to qualify" Archuleta, who began renovation work on the home after the plaintiffs terminated the defendant's services. The court responded that the defendant would have the opportunity to voir dire the witness and instructed the defendant to raise his concern "at the appropriate time." The defendant then sought to make an oral motion in limine, arguing that because Archuleta is not a licensed plumber, he does not have credentials to testify on matters related to plumbing. The court stated that at that time it would not preclude Archuleta from testifying and told the defendant that he would "have the opportunity to ask [Archuleta] questions that may impact negatively on his qualifications" at the time of the proposed testimony.

At trial, shortly before the plaintiffs called Archuleta to testify, the defendant raised the issue of Archuleta's qualifications: "And, Your Honor, if I may, I would remind the court that you agreed to voir dire the expert as to whether or not he is eligible to testify as an expert." The court responded, "[w]ell, the answer on that is, if someone does ask a question, sort of an expert type question, you have a right to object. If you object, then, I will consider whether the person is capable of giving an opinion in a particular area and I'll decide that." Shortly thereafter, the plaintiffs' counsel called Archuleta to the stand, questioned him about his credentials and then offered him as an "expert in home improvement contracting," to which the defendant objected: "Vague. Vague, too many areas involved . . . that will be brought up in his testimony." In response, the court questioned Archuleta about his experience, to which Archuleta responded that he had been working in the home improvement business for almost nine years, that he had worked on approximately three hundred houses, and that his work included "finish work . . . tearing down sheetrock, hiring plumbers or electricians, in what I am not an expert in, to work with plans or architectural drawings, put everything back together, tile, painting, trim, additions, framing, whatever . . . they need to do." The court then concluded: "I'll find that Mr. Archuleta is a[n] expert in

home improvement contracting. He's been doing it for nine years, he's worked on over three hundred houses. And he's worked both as a contractor himself, but also as a [general contractor] hiring other contractors. So, I'll find that he is an expert in the area."

"We review a trial court's decision to [admit] expert testimony for an abuse of discretion. . . . We afford our trial courts wide discretion in determining whether to admit expert testimony and, unless the trial court's decision is unreasonable, made on untenable grounds . . . or involves a clear misconception of the law, we will not disturb its decision." (Internal quotation marks omitted.) *Prescott* v. *Gilshteyn*, 227 Conn. App. 553, 573, 322 A.3d 1060, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024).

The defendant asserts that the court ignored Archuleta's admission that he is not an expert in plumbing and that this "misstep" led to the court's finding that, "based upon the numerous deficiencies observed by [Archuleta], many of which went to the functionality of the plumbing and drains and items that could have had long-term problems without adequate correction, it was reasonable to remove the partially completed work and redo it entirely." The defendant further contends that the court "acknowledged [the defendant's] right to voir dire Archuleta but never afforded [him] the opportunity and failed to conduct a thorough examination of his qualifications, despite the court's agreement, particularly concerning plumbing expertise."

When raising an evidentiary claim on appeal, it is the appellant's burden to identify the specific evidence that was erroneously admitted and the objection to that testimony that was raised at trial. See *Local 84, Theatrical Stage Employees, Moving Picture Technicians, Artists & Allied Crafts of the United States, its Territories & Canada, AFL-CIO, CLC* v. *Francis*, 138 Conn. App. 77, 91, 51 A.3d 401 (2012) (declining to review claim that trial court improperly admitted expert testimony where appellants "failed to provide any citations to the specific portions of [the expert's] testimony that they claim

were improperly admitted by the court" and "failed to provide this court with any specific objections made to the trial court, as invited by that court, regarding those specific portions of testimony"). The defendant places significant emphasis on Archuleta's admission that he was not a plumber or plumbing expert; however, he does not identify any portion of Archuleta's testimony that requires plumbing expertise or that exceeds the scope of his qualifications as an expert in home improvement contracting. Additionally, the record reveals that the defendant did not object to any specific portion of Archuleta's testimony on the basis that he did not possess the appropriate qualifications to offer an expert opinion. Therefore, the defendant has failed to carry his burden of demonstrating that the court's decision to admit the plaintiffs' expert testimony was unreasonable, made on untenable grounds, or involved a misconception of the law.[8]

The defendant also asserts that "[t]he court relied on contradictory testimony of Archuleta indicating that [the defendant's tile] installation would 'not prevent

[8] In his appellate brief, the defendant makes a passing assertion that the court improperly permitted Archuleta to testify as an expert witness in home improvement contracting. Specifically, he asserts that, "[i]n ignoring Archuleta's admission that he is not an expert in plumbing, this admission by Archuleta directly exposes the trial court's decision to qualify him as an expert in home improvement contracting . . . as problematic . . . ." (Internal quotation marks omitted.) We find this claim to be inadequately briefed and, thus, conclude that the defendant abandoned such argument. "[When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Cokic* v. *Fiore Powersports, LLC*, 237 Conn. App. 558, 561, 351 A.3d 434 (2026). The defendant rests much of his claim that the court abused its discretion in admitting Archuleta's testimony on his contention that Archuleta was not qualified as an expert in plumbing. The defendant fails to offer any substantive discussion or authority challenging Archuleta's qualifications as an expert in home improvement contracting specifically, nor does he elaborate on why an expert in home improvement contracting would require expertise in plumbing.

water leakage in the future' " and that "[t]he court relied on . . . inconsistent testimony, describing an improperly installed shower fixture . . . ." These contentions relate to the weight given to Archuleta's testimony by the fact finder, rather than its admissibility. It is axiomatic that, "[i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) *Kohl's Dept. Stores, Inc.* v. *Rocky Hill*, 219 Conn. App. 464, 485, 295 A.3d 470 (2023).

We conclude that the defendant has not carried his burden of establishing that the court abused its discretion in admitting into evidence Archuleta's expert testimony or in crediting Archuleta's testimony to find that the work performed by the defendant in the upstairs bathrooms was unworkmanlike.

IV

The defendant's final claim asserts that "[t]he trial court's overreach—disregarding counterclaims for breach, unjust enrichment, and defamation, including admitted exhibits . . . ignoring defenses . . . restrictive rulings, pro se prejudice, and bias—violated [the defendant's] fair trial rights . . . ." We find this claim to be inadequately briefed and, thus, decline to review it.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . .

For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Cokic* v. *Fiore Powersports, LLC*, 237 Conn. App. 558, 560–61, 351 A.3d 434 (2026).

"In addition, briefing is inadequate when it is not only short, but confusing, repetitive, and disorganized. . . . We are mindful that [i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022).

We conclude that the defendant's claim that the court deprived him of his right to a fair trial is inadequately briefed. The defendant's assertions in support of this claim primarily rest on a recitation of the arguments repeatedly made throughout his appellate brief and thoroughly addressed in this opinion. With respect to the remaining arguments, the defendant offers bullet points, many of which consist of a single sentence providing nothing more than a cursory assertion with no legal authority or analysis. See id., 631 (briefing is inadequate where it is lacking meaningful analysis). Furthermore, in some instances, the defendant fails to provide the necessary facts for this court to determine the context from which the claim arises. Because the defendant's briefing of his final claim is inadequate for us to conduct any meaningful review, we decline to review it.

The judgment is affirmed.

In this opinion the other judges concurred.